**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **SAMANTHA CORTEZ,** Individually and as a Representative of a Class of Participants and Beneficiaries on Behalf of the Rithm Capital Family of Companies 401(k) Plan<br><br>Plaintiff,<br><br>**v.**<br><br>**RITHM CAPITAL LLC, and DOES 1-10 INCLUSIVE,**<br><br>Defendants. | Case No.: 3:25-cv-02462 |

---

### PLAINTIFF'S CLASS ACTION COMPLAINT

---

1.      Plaintiff, Samantha Cortez, individually and as representatives of a class of participants and beneficiaries of the Rithm Capital Family of Companies 401(k) Plan (f/k/a Rithm Newrez Family of Companies 401(k) Plan, hereinafter the "Plan") brings this Employee Retirement Income Security Act of 1974 ("ERISA")[1] action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) and Rule 23 of the Federal Rules of Civil Procedure against Defendants, Rithm Capital LLC (f/k/a Caliber Home Loans, Inc., hereinafter "Rithm") and Does 1-10 (together with Rithm, "Defendants") for: (1) failure to comply with Plan terms; (2) breach of ERISA's fiduciary duties; (3) violation of ERISA's prohibited transaction rules; and (4) violation of ERISA's anti-inurement provision.

---

[1] 29 U.S.C. §§1001–1461.

2.      ERISA requires a fiduciary to act "solely in the interest of participants . . . for the exclusive purpose of providing benefits to participants and beneficiaries; and defraying reasonable expenses of administrating the plan" to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest." 29 U.S.C. §§ 1104(a)(1)(A)-(B); 1106(b)(1).

3.      The Fifth Circuit recognizes these duties as the "highest known to the law." *Bussian v. RJR Nabisco, Inc.,* 223 F. 3d 286, 294 (5th Cir. 2000). These duties require fiduciaries to have "an eye single to the interests of the participants and beneficiaries," *Donovan v. Bierwirth,* 680 F.2d 263, 271 (2d Cir. 1982), and "to deal fairly and honestly with beneficiaries," *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1025 (2025) ("*Cunningham*"). The Fifth Circuit also instructs ERISA fiduciaries that "conflicts of interest must be shunned." *Perez v. Bruister*, 823 F.3d 250, 261 (5th Cir. 2016).

4.      The Supreme Court and Fifth Circuit warn ERISA fiduciaries that they are not immunized from their duties to exclusively act in the best interest of plan participants when they purport to adhering to a plan document or because the conduct at issue is not prohibited by ERISA. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (explaining that compliance with a plan document does not necessarily mean a fiduciary has discharged its duties with the prudence required under ERISA); *Bussian*, 223 F. 3d at 295 ("[S]imply because ERISA allows an employer to [take an action] does not mean that a fiduciary's acts undertaken . . . may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.").

5.      ERISA "Section 1106 supplements [a] fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Cunningham*, 145 S. Ct. at 1025.

6.      ERISA also mandates that fiduciaries must discharge their fiduciary duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. 1104(a)(1)(D). The Supreme Court has clearly stated that there is "no exemption from this duty. . ." *Kennedy v. Plan Administrator for DuPoint Savings and Investment Plan*, 555 U.S. 285, 300, 129 S. Ct. 865 (2009).

7.      As detailed below, instead of following the terms of the Plan and loyally and prudently acting in the best interest of Plan Participants and avoiding prohibited transactions, Defendants chose to use Plan assets to overwhelmingly benefit Rithm, to the detriment of the Plan and its participants, by using over $8.3 million of Plan assets to offset Rithm's contractual obligations to make declared matching contributions to the Plan, while using less than $1.5 million to offset Plan expenses and requiring Plan Participants to pay over $1.8 million in Plan expenses to the Plan's third-party service providers, both directly and indirectly, that should never have come out of (or reduced the value of) their accounts. Even more egregious, during the class period Defendants had millions of dollars of leftover Plan assets available at the end of each year that could have covered substantial portions or all of Plan participants' expenses even after they enriched Rithm with over $8 million in Plan assets.

8.      To remedy these fiduciary breaches and ERISA violations, Plaintiff, individually and as representative of a class of participants and beneficiaries of the Plan, brings this action on behalf of the Plan under 29 U.S.C. §1132(a)(2) and (3) to enforce Defendants' personal liability under 29 U.S.C. §1109(a) to make good to the Plan all losses resulting from each breach of

fiduciary duty and to restore to the Plan any profits made through Defendants' use of the Plan's assets. In addition, Plaintiff seeks such other equitable or remedial relief for the Plan as the Court may deem appropriate.

## JURISDICTION AND VENUE

9.      This Court has exclusive subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

10.      This Court has personal jurisdiction over Defendants because they transact business in the Dallas Division of the Northern District of Texas, reside and are domiciled in this District and have their principal place of business in this District, have significant contacts with this District, and because ERISA provides for nationwide service of process.

11.      Venue is appropriate in the Dallas Division of the Northern District of Texas within the meaning of 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(b) because some or all of the violations of ERISA occurred in this District and Defendants principal place of business is located at 1525 S. Beltline Rd, Coppel, Texas 75019, in the Dallas Division of the Northern District of Texas.

## PARTIES

12.      The Plan is a defined contribution, individual account, employee pension benefit plan under 29 U.S.C. §1002(2)(A) and §1002(34) that covers eligible employees of Rithm and is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1103(a).

13.      Plaintiff Samantha Cortez is a citizen of the State of Texas, was previously employed by Rithm during the class period, and was a participant in the Plan during the class period. As such, he is a participant under ERISA § 3(7), 29 U.S.C. § 1002(7).

4

14.    During the class period, Plaintiff's individual account was charged, and Plaintiff paid expenses attributable to the maintenance and administration of the Plan to the Plan's third-party service providers.

15.    Plaintiff has Article III standing to bring this action on behalf of the Plan because she suffered actual injuries through the misallocation of Plan assets by Defendants with regard to the Plan as it relates to her individual 401(k) account. This injury is fairly traceable to Defendants' unlawful conduct in using Plan assets for their own benefit and this harm is likely to be redressed by a favorable judgment providing appropriate equitable relief to the Plaintiff and to the class.

16.    Having established Article III standing, Plaintiff may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond his own injuries.

17.    The Plaintiff and all participants in the Plan did not have knowledge of all material facts (including, among other things, the misallocation of Plan assets in the form of forfeitures) necessary to understand that Defendants breached their fiduciary duties until shortly before this suit was filed.

18.    Having never managed a very large 401(k) Plan, Plaintiff, and all participants in the Plan, lacked actual knowledge of how Plan forfeitures should be allocated by the Defendants and also lacked actual knowledge of how Plan forfeitures were used by the Defendants.

19.    Rithm is the employer under the Plan and is located at 1525 S. Beltline Rd, Coppel, Texas 75019.

20.    Rithm is the Plan sponsor under 29 U.S.C. § 1002(16)(B) and the Plan Administrator pursuant to 29 U.S.C. § 1002(16)(A) with broad authority over the administration and management of the Plan.

21.    The defendants sued by the fictitious names DOES 1 through 10, inclusive, are Plan fiduciaries unknown to Plaintiff who exercise or exercised discretionary authority or discretionary control respecting the management or disposition of its assets, or have had discretionary authority or discretionary responsibility in the administration of the Plan and are responsible or liable in some manner for the conduct alleged in the complaint. Plaintiff will amend this complaint to allege the true names and capacities of such fictitiously named defendants when they are ascertained.

<u>**FIDUCIARY STANDARD REQUIRED UNDER ERISA AND FIFTH CIRCUIT**</u>

22.    Under ERISA, when making the decision regarding the use of Plan assets, Defendants have been and are required by 29 U.S.C. §§ 1104(a)(1)(A) to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; ***and*** (ii) defraying reasonable expenses of administering the plan." (emphasis added); *Cunningham*, 145 S. Ct. at 1025.

23.    Under 29 U.S.C. §§ 1104(a)(1)(B), ERISA "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets" *Fifth Third Bancorp*, 573 U.S. at 419, which requires fiduciaries to "act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would. . . .", 29 U.S.C. § 1104(a)(1)(B).

24.    The duties of loyalty and prudence are the "highest known to the law," *Bussian v. RJR Nabisco, Inc.,* 223 F. 3d 286, 294 (5th Cir. 2000), and require fiduciaries to "maximize retirement savings for participants", *Fifth Third Bancorp*, 573 U.S. at 420.

25.    Under ERISA, 29 U.S.C. § 1104 (a)(1)(D) also requires plan fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan . . ."

6

26.    Under ERISA, anyone who exercises discretion or control over plan assets, including Rithm as Plan Sponsor and as Plan Administrator, is a fiduciary (hereafter "Plan Fiduciaries" or "Defendants"). 29 U.S.C. § 1002(21)(A).

27.    Fiduciaries are not immunized from their duties to exclusively act in the best interest of plan participants when they purport to adhere to the plan document or because the conduct at issue is not prohibited by ERISA. *Fifth Third Bancorp*, 573 U.S. at 421 (explaining that compliance with a plan document does not necessarily mean a fiduciary has discharged its duties with the prudence required under ERISA); *Bussian*, 223 F. 3d at 295 ("[S]imply because ERISA allows an employer to [take an action] does not mean that a fiduciary's acts undertaken . . . may deviate from ERISA's command that a 'fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.'").

28.    As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). As such, a participants' retirement benefit in a defined contribution plan equals (1) the amount of the participants' voluntary contributions; *plus* (2) the amount of any employer contributions; *plus* (3) any investment returns on those contributions; *minus* (4) plan and investment expenses. *Cunningham*, 145 S. Ct. at 1026 (explaining that defined contribution participants "maintain individual investment accounts within those plans, the value of which is determined by the market performance of employee and employer contributions, less expenses").

## FACTS APPLICABLE TO ALL COUNTS[2]

### A. The Plan

29.    The Plan was created by Rithm for the sole benefit of its eligible employees.

30.    In accordance with ERISA, the Plan's operating documents provide that "All contributions made by the Employer to the Trust Fund will be used for the exclusive benefit of the Participants and their Beneficiaries and will not be used for nor diverted to any other purpose except the payment of the costs of maintaining and administering the Plan."

31.    Throughout the class period the Plan paid direct and/or indirect compensation to third-party service providers (listed in the Plan's Form 5500s) for services to administer the Plan ranging from, among others, recordkeeping and information management, administration, account maintenance, loan processing,  participant communication, consulting services, investment advisory services paid directly and indirectly by the Plan. Hereafter the payment for services provided to the Plan (directly or indirectly) shall collectively be referred to as "Administrative Expenses".

32.    The use of Plan assets to pay Administrative Expenses from the accounts or the value of the investments[3] of Plan Participants reduces the funds available to Plan Participants for distribution and/or investing and deprives the Plan of funds that otherwise would have been earned on the amounts deducted.

---

[2] All factual assertions in this section are taken from: (1) documents provided by Defendants to Plaintiff's counsel, including the Plan's operative governing documents during the class period and the Plan's summary plan description; (2) the Plan's Form 5500s filed by Defendants with the Department of Labor and publicly available through the "DOL's" website at https://www.efast.dol.gov/5500Search/; and (3) Plan documents provided by Plaintiff.
[3] Some of the Administrative Expenses are paid to the Plan's recordkeeper from the investment options in the Plan through the expense ratio of those investment options and are not reflected in the account statements of the Plan Participants.

33.    Throughout the class period, the Plan has been funded by a combination of elective deferrals by Plan Participants and company matching contributions ("Employer Matching Contributions"), each of which is deposited into the Plan's trust fund and allocated to individual participant accounts.

34.    Throughout the class period the terms of the Plan provided for matching contributions and the Plan Fiduciaries had discretion to declare Employer Matching Contributions for each plan year. Once the Plan Fiduciaries declare the Employer Matching Contributions, then Rithm is contractually required to make Employer Matching Contributions to the Plan based on each participant's contributions.

35.    Rithm must pay all Employer Matching Contributions that have accrued throughout a calendar year to the Plan trustee within a reasonable period of time after the end of the prior calendar year.

36.    In every year during the class period, Rithm declared an Employer Matching Contribution was thus contractually obligated to make Employer Matching Contributions to the Plan.

37.    Upon their deposit into the Plan's trust fund, all participant contributions and Rithm Employer Matching Contributions become assets of the Plan.

38.    Under the terms of the Plan, participants are immediately vested in their own contributions, as well as any actual earnings thereon. Participants are 100% vested in Rithm Employer Matching Contributions, nonelective contributions and any actual earnings thereon after four years.

39.    To the extent a participant is not 100% vested upon termination of employment, the participant forfeits the value of Rithm contributions and any actual earnings thereon (hereafter

"Forfeited Plan Assets") in his or her account on the earlier of the date the participant takes a distribution of his or her vested interest in the Plan or the date the participant incurs a five-consecutive-year break in vesting service (within the meaning of the Plan document).

40. During the class period, the Plan document clearly instructed Plan Fiduciaries how to allocate Forfeited Plan Assets in a section titled "Application of Forfeitures". That section begins by telling the Plan Fiduciaries that they "may elect to use any portion of the Forfeiture Account to pay administrative expenses incurred by the Plan." If "*any portion*" of the Forfeited Plan Assets are still available after paying the Administrative Expenses the remainder must "be used *first* to restore previous Forfeitures of Participants' Accounts . . ." If there are still "*any remaining forfeitures*" after paying Administrative Expenses and restoring participants' accounts, the Plan fiduciaries may then allocate the amount to all Participants or use the amounts to reduce Employer Matching Contributions. Accordingly, Forfeited Plan Assets should have been used to pay all Administrative Expenses *prior to* using Forfeited Plan Assets to reduce any Employer Matching contributions. The Plan Fiduciaries failed to follow the explicit provisions of the Plan. (Emphasis added.)

41. The Plan's 2023 Form 5500, which is filed publicly with the Department of Labor by Defendants, confirms that "Forfeitures may *first* be used to pay administrative expenses. *Remaining forfeitures, if any*, may then be used to reduce future employer contributions." (emphasis added)

**B.    Plan Fiduciaries' Disloyal and Conflicted Use of Forfeitures During Class Period**

42. Yet throughout the class period, the Defendants, in violation of the terms of the Plan document and ERISA, consistently did not use the Forfeited Plan Assets to offset Administrative Expenses prior to using the Forfeited Plan Assets to reduce Rithm's contractually

obligated and declared Employer Matching Contributions to the Plan resulting in a reduction in the value of Plaintiff and the Plan's accounts.

43.    Instead, the Plan Fiduciaries have consistently chosen to utilize the vast majority of Forfeited Plan Assets to benefit Rithm by reducing Rithm's contractually obligated declared contributions to the Plan and paying Administrative Expenses from Plan assets *other* than Forfeited Plan Assets, *i.e.*, participants' accounts.

44.    From 2019 through 2023, the terms of the Plan obligated Rithm to make Employer Matching Contributions to the Plan in the following amounts: (1) in 2019, at least $11,009,559[4]; (2) in 2020, at least $17,243,049; (3) in 2021, at least $18,562,443; (4) in 2022, at least $23,349,152; (5) and in 2023, at least $12,707,581.

45.    From 2019 through 2023, the Plan Fiduciaries' decided to offset Rithm's obligation to make Employer Matching Contributions by allocating Forfeited Plan Assets in the following amounts: (1) in 2019, $782,132; (2) in 2020, $545,442; (3) in 2021, $1,150,713; (4) in 2022, $2,453,955; and (5) in 2023, $3,397,438. These actions saved Rithm the respective amounts, which flowed directly to its bottom-line profit.

46.    From 2019 through 2023, the Plan Fiduciaries were required under the terms of the Plan and ERISA to direct the use of Forfeited Plan Assets in the following minimum amounts: (1)

---

[4] Derived from the Plan's 2019-2023 Forms 5500s. For 2019, the figure was derived from Rithm's disclosed contribution amount net of forfeitures of $10,227,427 plus $782,132 of Forfeited Plan Assets that were used to reduce Employer Contributions. This methodology was used for each subsequent year.

in 2019, approximately $1,144,926[5]; (2) in 2020, approximately $576,791; (3) in 2021, approximately $1,787,018; (4) in 2022, $5,631,608; and (5) in 2023, $3,659,307.

47.    From 2019 through 2023, the Plan Fiduciaries caused Plan Participants to pay Administrative Expenses through deductions from their accounts and indirectly through revenue sharing or similar methods. The minimum direct amounts paid by participants were: (1) in 2019, $519,691; (2) in 2020, $598,587; (3) in 2021, $817,402; (4) in 2022, $744,508; (5) and in 2023, $629,330.[6]

48.    Throughout the class period the terms of the Plan required Plan Fiduciaries to use Forfeited Plan Assets to provide benefits and defray Administrative Expenses as soon as administratively practicable. As of December 31, each year from 2019 through 2023, unallocated Forfeited Plan Assets remained unused in the following amounts: (1) in 2019, $27,919; (2) in 2020, $6,395; (3) in 2021, $63,248; (4) in 2022, $2,912,737; and (5) $42,416. At all times during the class period it was administratively feasible to use Forfeited Plan Assets to provide retirement benefits and pay Administrative Expenses and avoid carrying these amounts in an unallocated plan account over to the next calendar year.

49.    From 2019 through 2023, the Plan Fiduciaries only used $1.4 million to offset Administrative Expenses out of over $12.8 million in Forfeited Plan Assets available for direction.

---

[5] Derived from the Plan's 2019-2023 Forms 5500s. For 2019, the amount of $1,144,926 represents the $1,117,007 of Forfeited Plan Assets that were used during the year plus the $27,919 in unallocated Forfeited Plan Assets in the plan on December 31, 2019. This methodology was used for each subsequent year.

[6] The amount of Plan Administrative Expenses specifically identified in this Complaint likely understates the actual Plan Administrative Expenses paid by Plan participants because the amounts do not include undisclosed indirect compensation paid by Plan participants.

50. A prudent and loyal fiduciary presented with this scenario, would not have applied millions of dollars to offset future company contributions and left millions of dollars unused each year when Plan participants shouldered millions of dollars in administrative expenses. These actions by the fiduciaries, at a minimum, necessitate the inference that imprudence or disloyalty was at play in their decision-making process.

51. The Plan's 2024 Form 5500 is not yet available, but, upon information and belief, the amount of unallocated Forfeited Plan Assets for calendar year 2023 (provided above) was substantially similar in calendar year 2024 and that in 2024 the Plan Fiduciaries again exercised discretion over, and control of, Plan assets by failing to use the unallocated Forfeited Plan Assets to pay Administrative Expenses or to allocate the Forfeited Plan Assets back to eligible participants in accordance with a definite formula defined in the Plan.

52. The following chart demonstrates the Plan Fiduciaries' disloyal and conflicted use of forfeitures during the class period:

| YEAR | FORFEITURES USED FOR RITHM | FORFEITURES USED FOR PLAN ADMIN EXPENSES | EXPENSES CHARGED TO THE PLAN (Direct Compensation) | BALANCE AT YEAR END NOT USED |
|---|---|---|---|---|
| 2019 | $782,132 | $334,875 | $519,691 | $27,919 |
| 2020 | $545,442 | $24,954 | $598,587 | $6,395 |
| 2021 | $1,150,713 | $573,057 | $817,402 | $63,248 |
| 2022 | $2,453,955 | $264,916 | $744,508 | $2,912,737 |
| 2023 | $3,397,438 | $219,453 | $629,330 | $42,416 |
| **Total** | **$8,329,680** | **$1,417,255** | **$3,309,518** | **$3,052,715** |

13

53.    Upon information and belief, the Plan Fiduciaries have continued to violate ERISA in their use of Forfeited Plan Assets.

**C.    Defendants' Plan and ERISA Fiduciary Violations Based on Forfeiture Use**

54.    Under the clear and unambiguous terms of the Plan, Plan Fiduciaries were required to first use Forfeited Plan Assets to pay Administrative Expenses.

55.    Accordingly, under the terms of the Plan document, the Plan Fiduciaries did not have discretion related to the use of Forfeited Plan Assets.

56.    Under ERISA, when making the decision regarding the use of Forfeited Plan Assets, the Plan Fiduciaries have been and are required by 29 U.S.C. § 1104 (a)(1)(D) to discharge their duties "in accordance with the documents and instruments governing the plan . . . "

57.    As detailed above, the Plan Fiduciaries failed to follow the terms of the Plan when they failed to first use the Forfeited Plan Assets to cover the Administrative Expenses.

58.    However, even if the plan did not require Fiduciaries to first use the Forfeited Plan Assets to cover Administrative Expenses, which it does, ERISA and the Plan document granted discretion to the Plan Fiduciaries with respect to the use and control of Forfeited Plan Assets.

59.    Defendants did not, for example, investigate whether there was a risk that Rithm would be unable to satisfy its contribution obligations if forfeitures were used to pay Plan expenses as instructed by the Plan, or evaluate whether there were sufficient forfeitures to eliminate the Plan's expenses charged to participants and still offset a portion of Rithm's own contribution obligations, as a prudent person would have done

60.    The Plan Fiduciaries improperly, disloyally, and imprudently exercised that discretion to benefit Rithm at the expense of the Plan and Plan Participants by failing to use unallocated Forfeited Plan Assets to pay Administrative Expenses or allocate back to Plan

Participants and, instead, exercised that discretion to use Forfeited Plan Assets to reduce required Employer Matching Contributions.

61. Throughout the entire class period, the discretion given to the Plan Fiduciaries under the terms of the Plan and ERISA created a conflict of interest with respect to the Plan Fiduciaries' use of Forfeited Plan Assets. In other words, if the Plan Fiduciaries exercised their discretion to choose to allocate over $8.3 million of Forfeited Plan Assets (from 2019 through 2023) towards Rithm's Employer Matching Contributions, that decision would positively benefit the bottom-line profits of Rithm by that amount.

62. On the other hand, to the extent the Plan Fiduciaries exercised their discretion granted to them by Rithm under the terms of the Plan to use the Forfeited Plan Assets to reduce both the direct and indirect Administrative Expenses incurred by Plan Participants throughout the class period, that conduct would result in the Plan Participants receiving the full value of their defined contribution benefits promised to them under the terms of the Plan and as required by EIRSA and Supreme Court precedent (*i.e.*, acting solely in the interest of plan participants *and* for the exclusive purpose of providing retirement benefits and defraying reasonable expenses of administering the Plan). *See* 29 U.S. Code § 1104(a)(1).

63. If the Plan Fiduciaries had not acted contrary to the Plan or, alternatively, not used their discretion (despite having multiple other options available under the Plan and ERISA) to reduce employer contributions with plan assets, then $8.3 million in additional assets (from 2019 through 2023) would have been contributed to the Plan and would have been invested by the Plan Participants.

64. Crucially, had the Plan Fiduciaries used their discretion to use the $8.3 million (from 2019 through 2023) in Forfeited Plan Assets to defray Administrative Expenses or allocate

the $8.3 million in Forfeited Plan Assets back to Plan Participants to defray Administrative Expenses, that would not have caused Rithm to pay more than what Rithm promised under the terms of the Plan and its declared contributions. Rather, the Plan Fiduciaries' decision to allow Rithm to offset its Employer Matching Contributions with Forfeited Plan Assets caused Rithm to pay $8.3 million less than what Rithm promised to contribute in Employer Matching Contributions to the Plan under the terms of the Plan.

65.     Loyal fiduciaries following a prudent process would not choose to offset Rithm's declared Employer Matching Contributions instead of reducing the Plan Participants' Administrative Expenses or, alternatively failing to allocate the Forfeited Plan Assets back to the accounts of Plan Participants to be used to defray Administrative Expenses, which reduced the value of both the Plan as a whole and the accounts of individual Plan Participants.

66.     Defendants' conduct, at the very least, necessitates the inference that they either did not have processes in place to weigh the benefits to participants in allocating forfeitures, or that they ignored their duty to act exclusively for the Plan participants because the Plan Fiduciaries were motivated by self-interest and/or the interest of Rithm when allocating Forfeited Plan Assets.

67.     To the extent that Defendants exercised their discretion, they exercised it almost solely for the exclusive purpose of reducing Rithm's declared Employer Matching Contributions to the Plan, thereby saving Rithm millions of dollars at the expense of the Plan and Plan Participants and not for the purpose of "maximiz[ing] retirement savings for participants", as the Supreme Court requires of ERISA fiduciaries. *Fifth Third Bancorp*, 573 U.S. at 420.

68.     Consequently, throughout the class period, an objective analysis of the available options throughout the class period, guided solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants ***and*** defraying

reasonable expenses of administering the Plan would indisputably not result in Plan Fiduciaries choosing to use the vast majority of Forfeited Plan Assets available to reduce future Employer Contributions throughout the class period instead of using Forfeited Plan Assets to defray Administrative Expenses.

69.     Additionally, under the minimum standard of care under the circumstances then prevailing, a prudent plan fiduciary having the discretion to select among several options related to the allocation of Forfeited Plan Assets, acting solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and defraying reasonable expenses of administering the plan, would choose options that would ensure that Forfeited Plan Assets were to allocated during the same year in which they arose.

70.     In other words, here the facts suggest that throughout the class period, the Plan Fiduciaries improperly, disloyally, and imprudently exercised discretion when deciding to use Forfeited Plan Assets to overwhelmingly reduce Employer Matching Contributions when other options were available.

71.     As described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce Employer Matching Contribution was, all else being equal, in the best interest of Rithm because that option decreased Rithm's own declared contribution costs.

72.     Similarly, as described in detail above, throughout the class period, the Plan Fiduciaries' decisions to use Forfeited Plan Assets to reduce Employer Matching Contributions over paying Administrative Expenses or allocating the Forfeited Plan Assets to the accounts of eligible Plan Participants reduced the value of Plan assets and the accounts of Plan Participants and the benefits available to Plan Participants.

17

73.     Further, as described in detail above, throughout the class period, the Plan Fiduciaries exercised discretion over, and control of, Plan Assets when directing the use of Participants' accounts to pay Administrative Expenses to third-party service providers.

74.     Throughout the class period the Plan Fiduciaries caused the Plan to engage in thousands of transactions that used plan assets to constitute a furnishing of services between the plan and a party in interest.  At the same time, through these thousands of transactions paying Administrative Expenses from the accounts of Plan participants to third-party service providers, the Plan Fiduciaries also caused the Plan to engage in transactions that constitute a direct or indirect use of Forfeited Plan Assets for the benefit of a party in interest (*i.e.*, Rithm).

75.     Likewise, after the Plan Fiduciaries improperly exercised discretion and control over Plan asset by causing the payment of Administrative Expenses from the accounts of Plan participants, the Plan Fiduciaries then caused the Plan to engage in several transactions with a Party in interest (*i.e.*, Rithm), that for the benefit of Rithm, allowed Rithm to use Forfeited Plan Assets to offset and reduce the amount of Employer Matching Contributions (Plan assets) transferred to the Plan.

76.     There are no facts or circumstances throughout the class period that make discretionary decisions to overwhelmingly prioritize the use of Forfeited Plan Assets to reduce Rithm's declared contribution obligation consistent with discharging the Plan Fiduciaries' duties with respect to the Plan *solely* in the interest of the participants and beneficiaries **and for the exclusive purpose of providing benefits to participants** and their beneficiaries *and* **defraying reasonable expenses** of administering the Plan.

77.     These actions are more consistent with the Plan Fiduciaries trying to increase Rithm's profit, despite their fiduciary duties.

78. While Defendants benefited, the Plan and its participants and beneficiaries suffered. If Defendants decided throughout the class period to use Forfeited Plan Assets to defray the reasonable expenses of administering the Plan, the value of the Plan and the value of the participants' individual accounts would have been greater. Not because the Plan Participants would receive an additional benefit but because they would receive the full benefit they were entitled to under the Plan and ERISA for a defined contribution plan participant.

79. To be clear, Plaintiff does not allege that ERISA prohibits fiduciaries from *ever* using forfeitures to offset employer contributions. Rather, Plaintiff alleges that under the specific facts and context of this Plan, a loyal and prudent fiduciary would not make the decisions that the Plan Fiduciaries made (as alleged above). Here, under the circumstances described, Defendants have breached their fiduciary duties, ERISA's prohibited transaction rules, and the Plan's own terms.

80. A prudent and loyal fiduciary acting exclusively in the best interest of the participants would only choose to offset plan expenses to the extent that there is concern that Rithm would otherwise be unable to meet its future contribution obligations. Otherwise, reducing Plan expenses is more beneficial to Plan participants.

81. Similarly, a loyal and prudent fiduciary would only offset the amount necessary to prevent Rithm from being unable to meet its future contributions and then allocate the remaining funds to other more beneficial options, like reducing plan expenses shouldered by the Plan participants.

82. Upon information and belief, Rithm was able to meet its future contributions throughout the class period and would have been able to meet its Employer Matching Contributions each year, even if no forfeitures were applied to offset its contributions.

83.     These facts and actions show, or, at a minimum, necessarily require the inference, that the Defendants either had no prudent processes in place to discharge of the funds timely or acted disloyally preferring to keep all the forfeiture funds to offset the Company's next year contributions beyond what was necessary rather than benefiting the Plan participants.

## TRANSACTIONS PROHIBITED BY ERISA

84.     ERISA "Section 1106 supplements [a] fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan." *Cunningham*, 145 S. Ct. at 1025.

85.     ERISA Section 1106 (a) prohibits transactions that benefit a party in interest. 29 U.S. Code § 1106(a)(1)(A)-(E).

86.     ERISA Section 1106(b) prohibits a fiduciary of the plan from dealing with the assets of the plan in any way that benefits the fiduciary or is adverse to the plan participants' interest. 29 U.S. Code § 1106(b)(1)-(3).

87.     ERISA Section 3(14) defines a party in interest to include the Plan employer (in this case Rithm), a Plan fiduciary (in this case Rithm), and the Plan's third-party administrators.

88.      Under ERISA, anyone who exercises discretion or control over plan assets, including the Plan sponsor (Rithm) and the Plan administrator (Rithm), is a fiduciary. 29 U.S.C. § 1002(21)(A).

89.     The Supreme Court instructs that "[a]t the pleading stage, [] it suffices for a plaintiff plausible to allege the three elements" of a prohibited transaction claim "no more, no less." *Cunningham*, 145 S. Ct. 1020, 1028.

20

## DEFENDANTS ENGAGED IN SELF-DEALING AND CAUSED MANY PROHIBITED TRANSACTIONS IN VIOLATION OF ERISA

90.     From 2019 through 2023, the Plan Fiduciaries caused, directed, and authorized tens of thousands of transactions, both directly and indirectly, extracting money from the accounts, or reducing the net value of investment options held by Participants in the Plan, causing Plan Participants to pay over $1.8 million directly for Administrative Expenses as well as additional amounts indirectly to the Plan's third-party service providers that should have been covered fully or in part by Forfeited Plan Assets.

91.     These transactions are memorialized in the statements received by each Plan Participant and are also memorialized in Plan level accounting, *e.g.*, a trust report of the Plan.

92.     Moreover, throughout at least a portion of the class period, Defendants directed and authorized Plan Participants to pay an indeterminable amount of indirect compensation for Administrative Expenses.

93.     Had the Defendants acted in accordance with the terms of the Plan document and ERISA the Defendants should have directed the use of Forfeited Plan Assets to defray the Administrative Expenses that Defendants instead required Plan Participants to pay through transactions from their individual accounts.

94.     Throughout the class period, Defendants also caused the Plan to engage in several transactions with Rithm, a party in interest, related to Rithm's contractual obligation to make Employer Matching Contributions to the Plan. For each of these transactions, the Plan Fiduciaries coordinated with the third-party recordkeeper and Rithm to calculate how much Rithm could reduce its obligatory payment to the Plan by offsetting the full amount owed with the use of Forfeited Plan Assets.

95.    In each of these instances, Defendants caused the Plan to engage in a transaction with Rithm that directly resulted in a smaller amount of money being paid by Rithm into the Plan.

96.    In other words, each time the Plan Fiduciaries engaged in calculations for the express purpose of calculating how much money Rithm could save from its declared contractual obligation to the Plan by using Forfeited Plan Assets to offset the amount of Rithm's contribution.

97.    As noted above, each of these transactions are also memorialized in the Plan trust reports.  Each of these transactions then serves to provide the assets necessary to execute thousands of transactions to invest Rithm Employer Matching Contributions and Forfeited Plan Assets pursuant to the investment instructions of Plan Participants.

98.    In other words, each of these transactions involves the receipt of Rithm declared Employer Matching Contributions and calculations related to Forfeited Plan Assets to enable a combination of Forfeited Plan Assets and Rithm Employer Matching Contributions to be combined for use in following the investment instructions of thousands of Plan Participants.

99.    In other words, throughout the class period, the Plan Fiduciaries engaged in the conduct of making calculations that caused the Plan to receive at least $8.3 million less in Rithm Employer Matching Contributions than what Rithm was obligated to make and which increased Company profits by at least $8.3 million.

100.    Additionally, the Defendants caused the Plan to engage in these transactions with Rithm that constituted and resulted in the use of Forfeited Plan Assets for the direct and indirect benefit of Rithm, a party in interest and Plan Fiduciary.

101.    Throughout the Class Period, by directing, authorizing, and causing at least six transactions with Rithm and tens of thousands of transactions with Plan Participants, Defendants

dealt with the Forfeited Plan Assets in their own individual interest and in Rithm's interest by using Forfeited Plan Assets to offset Rithm's contractual obligations to the Plan.

102.    Throughout the Class Period, by directing, authorizing, and causing at least six transactions with Rithm and tens of thousands of transactions with Plan Participants, the individual Plan Fiduciaries acted in their individual capacity and as agents of a party in interest, *i.e.*, Rithm, whose interests are adverse to the Plan or Plan Participants.

103.    Throughout the Class Period, by directing, authorizing, and causing at least six transactions with Rithm and tens of thousands of transactions with Plan Participants, the individual Plan Fiduciaries received consideration for their own personal accounts from Rithm as a result of their control over the transactions described above with a party in interest, *i.e.*, Rithm, involving the Forfeited Plan Assets, that enabled Rithm to reduce its costs and increase its profits thereby benefiting each individual Plan Fiduciary.

## CLASS ACTION ALLEGATIONS

104.    29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

105.    In acting in their representative capacity for the Plan, Plaintiff seeks to certify this action as a class action on behalf of all participants and beneficiaries of the Plan. Plaintiff seeks to certify, and to be appointed as representative of, the following class:

> All participants and beneficiaries of the Rithm Holdings Corporation Retirement Savings Plan (excluding the Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning September 4, 2019, and running through the date of judgment.

106.    The class includes at least 8,000 members and is so large that joinder of all its members is impracticable, pursuant to Federal Rule of Civil Procedure 23(a)(1).

23

107.   There are questions of law and fact common to this class pursuant to Federal Rule of Civil Procedure 23(a)(2), because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as the Plan and not as to any individual participant. Thus, common questions of law and fact include but are not limited to the following:

a.   Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b.   Whether Defendants breached their fiduciary duties to the Plan with respect to their management and allocation of Forfeited Plan Assets;

c.   Whether Defendants breached the terms of the Plan;

d.   Whether Plan Fiduciaries engaged in prohibited transactions with Forfeited Plan Assets;

e.   What are the losses to the Plan resulting from each alleged breach of ERISA; and

f.   What Plan-wide equitable and other relief the Court should impose to remedy Defendants' alleged breaches.

g.   Did fiduciaries of the Plan violate the anti-inurement provision of ERISA by using Plan assets for their own benefit?

108.   Plaintiff's claims are typical of the claims of the class pursuant to Federal Rule of Civil Procedure 23(a)(3), because Plaintiff was a participant during the time period at issue and all participants in the Plan were harmed by Defendants' misconduct.

109.   Plaintiff will adequately represent the class pursuant to Federal Rule of Civil Procedure 23(a)(4), because he was a participant in the Plan during the class period, has no interest that conflicts with the class, is committed to the vigorous representation of the class, and has engaged experienced and competent lawyers to represent the class.

110.   Certification is appropriate under Federal Rule of Civil Procedure 23(b)(1), because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish

incompatible standards of conduct for Defendants concerning its discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a); and adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

111.    Certification is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

112.    Plaintiff's attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

## COUNT I
### Breach of the Duty to Follow Terms of the Plan Document
### (29 U.S.C. 1104(a)(1)(D))

113.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

114.    As alleged herein, 29 U.S.C. 1104(a)(1)(D) imposes a fiduciary duty to act in accordance with the Plan documents and instruments governing the Plan.

115.    The Plan required the Defendants to use the Forfeited Plan Assets to pay all Administrative Expenses (both direct and indirect) prior to using Forfeited Plan Assets to reduce Rithm's declared contributions. Defendants failed to discharge their duty to act in accordance with the Plan document by using Forfeited Plan Assets to reduce employer declared contribution obligations in violation of the explicit terms of the Plan.

116.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan and class suffered injury and loss for which Defendants are personally liable and

25

are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty to follow the terms of the Plan document.

117. Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

118. Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their fiduciary duty to follow the terms of the Plan document.

## COUNT II
### Breach of ERISA's Fiduciary Duty of Loyalty
### (29 U.S.C. 1104(a)(1)(A))

119. Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

120. When exercising discretion and control over Forfeited Plan Assets and using them to reduce Rithm's declared contributions, instead of defraying the reasonable costs of administering the Plan or allocating the Forfeited Plan Assets back to eligible Plan Participants, the Plan Fiduciaries considered the best interest of Rithm and ignored the Plan document as opposed to the best interest of participants, in violation of ERISA.

121. When improperly exercising discretion and control over Forfeited Plan Assets and failing to use them to defray the reasonable costs of administering the Plan or allocating them back to the accounts of eligible Plan Participants, the Plan Fiduciaries considered the best interests of Rithm, as opposed to Plan Participants, in violation of ERISA.

122.    When exercising control over Forfeited Plan Assets, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan in violation of ERISA.

123.    As a direct and proximate result of Defendants' fiduciary breaches described herein, the Plan and class suffered injury and loss for which Defendants are personally liable and are subject to appropriate equitable relief, pursuant to 29 U.S.C. § 1109, including, without limitation, the disgorgement of all ill-gotten profits to Defendants resulting from the breach of their duty of loyalty.

124.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

125.    Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their duty of loyalty.

**<u>COUNT III</u>**
**Breach of ERISA's Fiduciary Duty of Prudence**
**(29 U.S.C. 1104(a)(1)(B))**

126.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

127.    When exercising discretion and control over Forfeited Plan Assets and using them to reduce Rithm declared contributions, the Plan Fiduciaries failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, when those aims are to act *solely* in the interest of the Plan Participants and beneficiaries **and for the exclusive purpose of providing benefits to Plan Participants** and their beneficiaries *and* **defraying reasonable expenses** of administering the Plan, in violation of ERISA.

128.    When deciding how to allocate Forfeited Plan Assets, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by alternatives under both ERISA and the Plan document, Defendants failed to undertake any reasoned and impartial decision-making process to determine whether using the Forfeited Plan Assets to reduce the Rithm's own declared contribution expenses, as opposed paying Administrative Expenses or for other purposes allowable under ERISA, was in the best interest of the Plan's participants or was prudent, and failed to *solely* consider which alternative would promote the **exclusive purpose of providing benefits to Plan Participants** and their beneficiaries **and defraying reasonable expenses** of administering the Plan, in violation of ERISA.

129.    By refusing to use Forfeited Plan Assets to eliminate Administrative Expenses that were instead charged to participant accounts, and instead deciding to use these Plan assets to reduce the Rithm's own declared contribution expenses, Defendants imprudently caused the value of the Plan's assets to decrease by causing Plan Participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Administrative Expenses.

130.    Additionally, by allowing millions of dollars of Forfeited Plan Assets to sit in an unallocated plan account at the end of each year instead of using those amounts to offset Administrative Expenses, Defendants' imprudently caused the value of the Plan's assets to decrease by causing Plan Participants to incur expense deductions from their individual accounts that would otherwise have been covered in whole or in part by utilizing the Forfeited Plan Assets to pay Administrative Expenses.

131.    Had the Plan Fiduciaries conformed with the minimum standard of care required under ERISA, the Plan Fiduciaries would not have used Forfeited Plan Assets to reduce Rithm's declared contribution obligation without first using some or all for Administrative Expenses.

132.    Alternatively, had the Plan fiduciaries conformed with the minimum standard of care required under ERISA, they would have used Forfeited Plan Assets to defray reasonable expenses of administering the Plan.

133.    Plaintiff and the class have suffered losses as a direct result of the Defendants' breach of their duty of prudence.

## COUNT IV
### Fiduciary Prohibited Transactions/ Self-Dealing
### (29 U.S.C. 1106(b))

134.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

135.    29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or

beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

136. Defendants were and continue to be Plan Fiduciaries. In their management and control of Forfeited Plan Assets, Defendants caused the Plan to use Plan assets (Forfeited Plan Assets) to fund Rithm's contractual obligation to make Employer Matching Contributions to the Plan. By allocating these Plan assets toward offsetting Rithm's Employer Matching Contributions obligations, Defendants saved Rithm millions of dollars in Employer Matching Contributions expenses. Defendants therefore dealt with the assets of the Plan in their own interest or for Rithm's own account, in violation of 29 U.S.C. § 1106(b)(1).

137. Additionally, Defendants in their individual capacity or as an agent of Defendant Rithm acted in a transaction involving the Plan on behalf of a party (Defendant Rithm) whose interests are adverse to the interests of the Plan and the interests of Plan Participants and their beneficiaries in violation of  29 U.S.C. § 1106(b)(2) and received consideration for their own personal accounts from parties dealing with the Plan in connection with transactions involving the assets of the Plan (Forfeited Plan Assets) in violation of 29 U.S.C. § 1106(b)(3).

138. As a result of this prohibited conduct, Defendants caused the Plan and Plan Participants and class to suffer losses in the amount of the Plan assets that were substituted for Employer Matching Contributions and lost earnings on those assets.

139. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## COUNT V
### Fiduciary Prohibited Transactions/ Self-Dealing
### (29 U.S.C. 1106(a))

140.   Plaintiff realleges and incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

141.   29 U.S.C. § 1106(a)(1) provides that "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect. . . exchange. . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

142.   Defendants are parties in interest, as that term is defined under 29 U.S.C. § 1002 (14), because they are Plan Fiduciaries and because Rithm is the employer of Plan Participants.

143.   The Plan's third-party administrators and other service providers are also parties in interest. *See Cunningham*, 145 S. Ct. at 1025 ("[ERISA], in turn defines a "party in interest'" to include various plan insiders, including the plan's administrator, sponsor, and its officers, as well as entities providing services to [the] plan.") (internal citations omitted).

144.   When Defendants elected to use Forfeited Plan Assets as a substitute for future employer contributions to the Plan, thereby saving Rithm millions of dollars in declared contribution expenses, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan assets for future employer contributions and/or use of Plan assets by or for the benefit of a party in interest.

145.   As a result of these prohibited transactions, Defendants caused the Plan to suffer losses in the amount of the Forfeited Plan Assets that were not used to defray Administrative Expenses and lost investment returns on those assets.

146. Additionally, when Defendants elected to use Forfeited Plan Assets as a substitute for declared Employer Matching Contributions to the Plan and not for Administrative Expenses, Defendants caused the Plan to engage in prohibited transactions with the Plan's third-party administrator and other service providers for the payment of Administrative Expenses from Plaintiff and all Plan Participants' individual accounts that were sent to the Plan's third-party administrators and other third party service providers and that should have been paid in part or full by the Forfeited Plan Assets.

## COUNT VI
## BREACH OF ERISA'S ANTI-INUREMENT PROVISION
### (29 U.S.C. 1103(c)(1))

147. Plaintiff realleges and incorporates herein by reference each preceding paragraph of this Complaint as though fully set forth herein.

148. Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

149. The balance in a participant's accounts that a participant forfeits when incurring a break in service prior to full vesting of the Company's contributions to the participant's account is an asset of the Plan.

150. By electing to utilize the majority of these Plan assets as a substitute for the Company's own future contributions to the Plan, thereby saving the Company millions of dollars in contribution expenses, Defendants caused the assets of the plan to inure to the benefit of the employer and failed to defray reasonable expenses of the plan in violation of 29 U.S.C. 1103(c)(1).

151.    Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from violation of ERISA's anti-inurement provision as alleged in this claim and to restore to the Plan all profits secured through their use of Plan assets. In addition, Plaintiff is entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in the Prayer for Relief.

152.    Each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

## **PRAYER FOR RELIEF**

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated participants and beneficiaries, respectfully requests that the Court:

- Find and declare that Defendants breached their fiduciary duties, ERISA's anti-inurement provisions, and engaged in prohibited conduct and transactions as described above;
- Find and adjudge that Defendants are personally liable to make good to the Plan all losses to the Plan resulting from each violation of ERISA described above, and to otherwise restore the Plan to the position it would have occupied but for these violations;
- Order the disgorgement of all assets and profits secured by Defendants as a result of each violation of ERISA described above;
- Determine the method by which Plan losses under 29 U.S.C. §1109 should be calculated;
- Order Defendants to provide all accounting necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C. § 1109(a);

- Remove the fiduciaries who have breached their fiduciary duties and enjoin them from future ERISA violations;

- Surcharge against Defendants and in favor of the Plan all amounts involved in any transactions which such accounting reveals were improper, excessive, and/or in violation of ERISA;

- Certify the class, appoint Plaintiff as class representative, and appoint the Chirinos Law Firm PLLC, Kendall Law Group, PLLC, and Bloom Legal LLC, as class counsel;

- Award to Plaintiff and the class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

- Order the payment of interest to the extent it is allowed by law; and

- Grant other equitable or remedial relief as the Court deems appropriate.


September 11, 2025                              Respectfully submitted,



                                               /s/ *Joe Kendall*
                                               JOE KENDALL
                                               Texas Bar No. 11260700
                                               **KENDALL LAW GROUP, PLLC**
                                               3811 Turtle Creek Blvd., Suite 825
                                               Dallas, Texas 75219
                                               Telephone: 214-744-3000
                                               Facsimile: 214-744-3015
                                               jkendall@kendalllawgroup.com

                                               **CHIRINOS LAW FIRM PLLC**
                                               Tulio D. Chirinos*
                                               370 Camino Gardens Blvd., Ste 106
                                               Boca Raton, FL 33432
                                               Telephone: (561) 299-6334
                                               tchirinos@chirinoslawfirm.com

**BLOOM LEGAL LLC**
Seth J. Bloom
Texas Bar No. 24094426
825 Girod Street, Suite A
New Orleans, Louisiana 70113
Telephone: (504) 599-9997
Email: sjb@bloomlegal.com

*\* Pro Hac Vice Application Forthcoming*

***Attorneys for Plaintiff and Proposed Class***

35