**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SAMANTHA CORTEZ, individually and as a Representative of a Class of Participants and Beneficiaries of the Rithm Capital Family of Companies 401(k) Plan, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:25-CV-2462-K |
| RITHM CAPITAL LLC, and DOES 1–10 INCLUSIVE, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Before the Court are Defendant Rithm Capital LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 23), Brief in Support (Doc. No. 24), and Appendix in Support (Doc. No. 25) (collectively, the "Motion"), Plaintiff Samantha Cortez's Response (Doc. No. 26), and Defendant Rithm's Reply (Doc. No. 31). The Court has carefully considered the Motion, Response, Reply, applicable law, and relevant portions of the record. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. Factual and Procedural Background

Defendant Rithm Capital LLC is an investment management company focusing on real estate and alternative investments. Pl.'s First Am. Compl. (Doc. No. 17) ¶ 20 (the "First Amended Complaint") (all citations herein are to the document assigned

page or paragraph number). Defendant Rithm sponsors and administers a defined contribution 401(k) retirement plan (the "Plan") for its employees. *Id.* ¶¶ 17, 21. Plaintiff Samantha Cortez is a former Rithm employee who participated in the Plan during her time with the company. *Id.* ¶ 12.

### A. The Plan

Like other defined contribution plans, the Plan offered by Defendant Rithm provides each participating employee with an individual investment account. *Id.* ¶ 27. The value of a participant's account is determined by four variables. *See id.* ¶ 55. The account will equal: (1) the participant's own contributions; *plus* (2) employer contributions made by Defendant Rithm; *plus* (3) investment returns on those contributions; *minus* (4) Plan and investment expenses paid to third-party service providers. *Id.*

The first component is the participant's own contributions. *Id.* ¶ 55. Participants may contribute a portion of their income to their accounts on a tax-deferred basis. *Id.* ¶ 26. Under the terms of the Plan, a participant's own contributions immediately vest. *Id.* ¶ 63.

The second component is employer contributions. *Id.* ¶ 55. Defendant Rithm, as employer, may contribute additional money to a participant's account by matching all or a portion of the participant's own contributions ("Employer Contributions"). *Id.* ¶ 27. Unlike a participant's own contributions, however, Employer Contributions do not automatically vest. *Id.* ¶ 64. Instead, a participant "must stay employed by Rithm

for four years before they become fully vested in the Rithm contributions to their account." Doc. No. 24 (Def. Rithm's Brief in Support of Mtn. to Dismiss) at 3; *see also* Doc. No. 17 ¶ 63. If a participant is terminated before Rithm's Employer Contributions have fully vested, the participant forfeits the unvested portion of those contributions (the "Forfeited Plan Assets"). *Id.* ¶ 64. Until reallocated, Forfeited Plan Assets are held in a "Forfeiture Account" by Defendant Rithm. *Id.* ¶ 65.

The third component is investment returns. *Id.* ¶ 55. Because the funds in a participant's account are invested, the value of the account may increase or decrease based on the investment returns earned on those funds. *See id.* ¶¶ 27, 55, 223.

The fourth component is Plan and investment expenses. *Id.* ¶ 55. The value of a participant's account is reduced by expenses paid to third-party service providers to help administer the Plan. *Id.* ¶ 55. Such expenses include the costs of "recordkeeping and information management, administration, account maintenance, loan processing, claims processing, accounting (including auditing), contract administrator, consulting, participant communication, and investment management" ("Administrative Expenses"). *Id.* ¶¶ 33, 69, 70.

So, in sum, the participant's account grows through the participant's own contributions, any vested Employer Contributions, and investment returns, but is reduced by Plan and investment expenses paid to third-party service providers, such as Administrative Expenses. *Id.*

**B. The Controversy**

The controversy in this case concerns the second and fourth components: Employer Contributions, and Plan and investment expenses. From 2019 to 2024, Defendant Rithm always made Employer Contributions. *Id.* ¶ 72. To offset these contributions, Plan Fiduciaries used Forfeited Plan Assets. *Id.* ¶ 73. Defendant Rithm's decision to offset its own Employer Contributions using Forfeited Plan Assets came at the expense of offsetting Administrative Expenses. *Id.* ¶ 73; Doc. No. 24 at 1 ("During the putative class period, Rithm elected to offset its matching contributions."). In other words, rather than using Forfeited Plan Assets to offset the cost of Administrative Expenses—the fourth component of a participant's account value—Defendants used them to cover Employer Contributions—the second component—that Defendant Rithm otherwise would have to pay itself. *See* Doc. No. 17 ¶¶ 7, 228.

Plaintiff alleges this violated the Employee Retirement Income Security Act of 1974 ("ERISA"). Specifically, Plaintiff contends "Defendants used plan forfeitures (Plan assets) in a manner that benefitted the employer rather than plan participants and did so without engaging in a prudent and loyal fiduciary decision-making process." Pl.'s Resp. (Doc. No. 26) at 3. As a result, Plaintiff claims Defendants reduced the overall value of Plaintiff's and the Plan's accounts. Doc. No. 17 ¶ 71.

Plaintiff filed suit on September 11, 2025. *See generally* Pl.'s Original Compl. (Doc. No. 1). Plaintiff brings claims against Defendant Rithm and Defendants DOES 1–10. *See generally* Doc. No. 17. Defendants DOES 1–10 are currently unascertainable

Plan fiduciaries that Plaintiff alleges "exercised discretionary authority or discretionary control respecting the management or disposition of [Plan] assets" ("Plan Fiduciaries"). *Id.* ¶ 22. Plaintiff brings claims for (1) breach of the duty to follow the terms of the Plan Document, (2) breach of ERISA's fiduciary duty of loyalty, (3) breach of ERISA's fiduciary duty of prudence, (4) violation of ERISA's fiduciary prohibited transactions / self-dealing under 29 U.S.C. § 1106(b), (5) violation of ERISA's fiduciary prohibited transactions / self-dealing under 29 U.S.C. § 1106(a), and (6) breach of ERISA's anti-inurement provision. *Id.* ¶¶ 188–93 (Count I), 194–201 (Count II), 202–11 (Count III), 212–17 (Count IV), 218–24 (Count V), 225–30 (Count VI).

Plaintiff timely filed her First Amended Complaint on January 5, 2026. *See generally* Doc. No. 17. Defendant Rithm moved to dismiss pursuant to Rule 12(b)(6) on February 4, 2026. *See generally* Doc. Nos. 23–25. Plaintiff responded on March 12, 2026. *See generally* Pl.'s Resp. (Doc. No. 26). Defendant Rithm replied on April 2, 2026. *See generally* Doc. No. 31. Plaintiff also filed an unopposed Motion for Leave to File a Notice of Supplemental Authority on June 29, 2026, *see generally* Doc. No. 32, which the Court granted on September 14, 2026, *see generally* Doc. No. 34. Defendant filed an unopposed Motion for Leave to File a Response to Plaintiff's Notice on August 18, 2026, *see generally* Doc. No. 33, which too was granted on September 14, 2026, *see generally* Doc. No. 34. The Motion is now ripe for review.

## II. Legal Standard

In reviewing a 12(b)(6) motion to dismiss, the Court may consider only "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must presume all well-pleaded facts in the plaintiff's complaint to be true and resolve any ambiguities or doubts regarding the sufficiency of the claims in the plaintiff's favor. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986).

A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Kane Enters.*, 322 F.3d at 374. The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Although not the same as a "probability requirement," facial plausibility calls for "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Twombly*, 550 U.S. at 556 ("Factual allegations must be enough to raise a right to relief above the speculative level."). If a plaintiff pleads factual content that allows the Court to reasonably infer that the defendant is liable for the alleged misconduct, the claim has facial plausibility. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation modified); *see Twombly*, 550 U.S. at 555 (although the court must take as true all the factual allegations in the complaint, it is not "bound to accept as true a legal conclusion couched as a factual allegation"). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)) (citation modified).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The district court may also consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## III. Application of the Law

### A. Count I: Duty to Follow Terms of the Plan Document

Count I alleges Defendants breached ERISA's requirement that fiduciaries discharge their duties "in accordance with the documents and instruments governing the Plan." Doc. No. 17 ¶¶ 188–93 (citing 29 U.S.C. § 1104(a)(1)(D)). In response to the Motion, Plaintiff "voluntarily dismisse[d] Count I." Doc. No. 26 at 6 n.4. Although

amendment—and not voluntary dismissal—is the proper vehicle for dropping individual claims, *Orthoflex, Inc. v. Thermotek, Inc.*, Nos. 3:11-CV-0870-D, 3:10-CV-2618-D, 2011 WL 4398279, at *1 (N.D. Tex. Sep. 21, 2011) (Fitzwater, C.J.), the Court treats Plaintiff's attempt to dismiss as an abandonment of Count I, *see Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff's failure to defend a claim in response to a motion to dismiss "constituted abandonment"). Accordingly, the Court **dismisses** Count I **without prejudice**.

**B. Count II: Duty of Loyalty**

Under Count II, Plaintiff alleges Defendants breached ERISA's duty of loyalty. Doc. No. 17 ¶¶ 194–201 (citing 29 U.S.C. § 1104(a)(1)(A)). Plaintiff claims Defendants breached this duty by using Forfeited Plan Assets "to reduce Defendant Rithm's declared contributions instead of defraying the reasonable costs of administering the Plan or allocating the Forfeited Plan Assets back to eligible Plan Participants." Doc. No. 17 ¶¶ 195 (citation modified). In its Motion, Defendant Rithm counters that courts addressing this theory have rejected it and this Court should do the same. Doc. No. 24 at 13–15 (collecting cases). For the following reasons, the Court agrees with Defendant Rithm and concludes the Motion should be granted as to Count II.

ERISA § 404(a)(1) imposes a duty of loyalty on fiduciaries. *See* 29 U.S.C. § 1104(a)(1). Specifically, under Section 404(a)(1)(A), a fiduciary has a duty of loyalty to discharge his or her duties with respect to a plan "for the exclusive purpose of (1)

providing benefits to participants and their beneficiaries, and (2) defraying reasonable expenses of administering the plan." *Hutchins v. HP, Inc. (Hutchins I)*, 737 F. Supp. 3d 851, 861 (N.D. Cal. 2024) (citing 29 U.S.C. § 1104(a)(1)(A)). ERISA, however, "does not guarantee substantive benefits"; rather, "it seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320–21 (2016). The duty of loyalty therefore secures the benefits a plan promises; it "does not create an exclusive duty to maximize pecuniary benefits." *Collins v. Pension & Ins. Comm. of S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998); *see also Hutchins I*, 737 F. Supp. 3d at 862; *Hutchins v. HP Inc. (Hutchins II)*, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025).

The majority view among courts is to reject the "novel legal theory under which it is a breach of fiduciary duty to allocate forfeited amounts to reduce employer contributions rather than to pay administrative costs." *Hutchins I*, 737 F. Supp. 3d at 862; *del Bosque v. Coca-Cola Sw. Beverages LLC*, No. 3:25-CV-01270-X, 2025 WL 3171326, at *4 (N.D. Tex. Nov. 13, 2025) (Starr, J.) (joining the "majority" view and adopting the *Hutchins I* reasoning). Although this issue has not yet been addressed by the Fifth Circuit, *del Bosque*, 2025 WL 3171326, at *4, Judge Starr in the Northern District of Texas and two other courts in this Circuit have already adopted it, *id.* at *4 (adopting the "majority view"); *Estay v. Ochsner Clinic Found. (Estay I)*, No. 25-507, 2025 WL 2644782, at *3–5 (E.D. La. Sept. 15, 2025); *Estay v. Ochsner Clinic Found.*

*(Estay II)*, No. 25-507, 2026 WL 809570, at *4 (E.D. La. Mar. 24, 2026); *Brown v. Peco Foods, Inc.*, 812 F. Supp. 3d 664, 672–73 (S.D. Miss. 2025). The undersigned agrees with these courts' analyses and adopts the majority view as to the duty of loyalty: "where the plan gives the defendant fiduciary the discretion as to how to allocate forfeitures, the fiduciary does not breach its duty of loyalty by choosing to apply them to employer contributions." *Brown*, 812 F. Supp. 3d at 673; *see also del Bosque*, 2025 WL 3171326, at *4.

Plaintiff's argument—that Defendants breached the duty of loyalty by allocating Forfeited Plan Assets to offset Employer Contributions rather than Administrative Expenses—is squarely rejected under the majority view. *Hutchins I,* 737 F. Supp. 3d at 862–64 (establishing majority rule and dismissing plaintiff's claim that it was a "breach of fiduciary duty to allocate forfeited amounts to reduce employer contributions rather than to pay administrative costs"). Accordingly, the Court finds that Count II fails to state a claim against Defendants for breach of ERISA's duty of loyalty. This conclusion, supported by the majority view, is appropriate for two reasons. First, ERISA does not require the Plan Fiduciaries to maximize the value of participants' accounts, but only to deliver the benefits the Plan promised. *Hutchins I*, 737 F. Supp. 3d at 863; *Hutchins II*, 767 F. Supp. 3d at 924. Yet, Plaintiff does not allege that she or any other participant received less than the Plan promised. Her theory instead is that her account could have been larger, *see, e.g.*, Doc. No. 17 ¶¶ 13–14, 71, 138, but ERISA imposes no such obligation. *Hutchins I*, 737 F. Supp. 3d at 863;

*Hutchins II*, 767 F. Supp. 3d at 924. Second, neither ERISA nor the Plan Document required the Plan Fiduciaries to apply Forfeited Plan Assets to Administrative Expenses. Congress and the Treasury Department have long understood that forfeitures may be directed to participant accounts, to employer contributions, or to administrative costs. *Hutchins I*, 737 F. Supp. 3d at 862–63 (citations omitted). The Plan Document indicates the same. Doc. No. 25 at 55–56 ("[Rithm] *may* elect to use any portion of the Forfeiture Account to pay administrative expenses incurred by the Plan."). Choosing among uses that ERISA and the Plan alike permit is not, without more, evidence of disloyalty.

Accordingly, Plaintiff has not plausibly stated a claim against Defendants for breach of ERISA's duty of loyalty. Count II is **dismissed without prejudice**.

### C. Count III: Duty of Prudence

Under Count III, Plaintiff argues that Defendants breached ERISA's fiduciary duty of prudence. Doc. No. 17 ¶¶ 202–11 (citing 29 U.S.C. § 1104(a)(1)(B)). Specifically, Plaintiff alleges that Plan Fiduciaries violated ERISA § 404(a)(1)(B) by employing a flawed decision-making process, *id.* ¶¶ 72–79, 124–29, 203–05, and allowing Forfeited Plan Assets to remain unallocated at the close of each Plan year, *id.* ¶¶ 130–36, 206–07, 209. In the Motion, Defendant Rithm counters that caselaw again forecloses Plaintiff's argument and her arguments are, in any event, conclusory. Doc. No. 24 at 10–19. Having taken the well-pleaded facts as true and viewing those in the light most favorable to Plaintiff, the Court concludes Plaintiff has pleaded Count III

with facial plausibility as the "factual content allows the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Therefore, the Motion is **denied** as to Count III.

### D. Counts IV and V: Prohibited Transactions

Under Counts IV and V, Plaintiff claims that Defendants breached ERISA's prohibition on certain fiduciary transactions and self-dealing. Doc. No. 17 ¶¶ 212–24 (citing 29 U.S.C. § 1106(a), (b)). Specifically, Plaintiff alleges Defendants engaged in prohibited transactions with the Plan's third-party administrator and other service providers, resulting in Defendant Rithm saving "millions of dollars." *Id.* ¶¶ 222–23. In its Motion, Defendant Rithm counters that Plaintiffs have failed to allege a prohibited transaction, as is required under ERISA § 406. *See generally* Doc. No. 24 at 6–8. For the following reasons, the Court agrees with Defendant Rithm and grants the Motion as to Counts IV and V.

ERISA § 406 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries by categorically barring certain transactions deemed likely to injure the pension plan." *Estay I*, 2025 WL 2644782, at *6 (quoting *Cunningham v. Cornell Univ.*, 604 U.S. 693, 697 (2025)) (citation modified). Section 406(a) provides, in large part, that "a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange of any property between the plan and a party in interest." *Id.*

(citing 29 U.S.C. § 1106(a)) (citation modified). Section 406(b) prohibits self-dealing. *Id.*

To state a claim under either Section 406(a) or (b), the plaintiff must first allege the existence of a prohibited transaction as contemplated by Section 406. *E.g.*, *Brown*, 812 F. Supp. 3d at 676 n.5; *Estay I*, 2025 WL 2644782, at *6. Prohibited transactions include those between a plan and a party in interest under Section 406(a), and self-dealing transactions between a plan and a plan fiduciary under Section 406(b). 29 U.S.C. § 1106(a)–(b). The typical "prohibited transactions" under Section 406 "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length"; "they generally involve uses of plan assets that are potentially harmful to the plan," such as "the lending of money," "extension of credit," or the sale, exchange, transfer or lease of any assets of the plan to a party in interest by the plan. *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996).

The majority of courts that have considered whether the use of forfeitures to offset employer contributions is considered a "prohibited transaction" have concluded that it is not. *E.g., Jacob v. RTX Corp.*, 2026 WL 173228 (E.D. Va. Jan. 22, 2026); *Brown*, 812 F. Supp. 3d at 676–77; *Estay I*, 2025 WL 2644782, at *6–7; *Dimou v. Thermo Fisher Sci., Inc.*, 2024 WL 4508450, at *11 (S.D. Cal. Sept. 19, 2024); *Hutchins I*, 737 F. Supp. 3d at 868. Defendant Rithm urges the Court to adopt the majority view. *See generally* Doc. No. 24 at 22–23. Plaintiff advances two counters. First, Plaintiff argues that she has, in fact, alleged a prohibited transaction because all Plaintiff must

do is "plausibly allege the elements of a prohibited transaction." Doc. No. 26 at 21. Second, Plaintiff claims Section 406(b) does not require a "transaction" at all. *Id.* The Court addresses each point in turn.

First, although Plaintiff is correct that she need only plausibly allege the elements of a prohibited transaction at this stage, the Court concludes Plaintiff has failed to meet this threshold. It is axiomatic that plaintiffs must still meet the plausibility standard when pleading Section 406 claims. *See Cunningham*, 604 U.S. at 709 ("[P]laintiffs seeking to state a Section 1106(a)(1)(C) claim must *plausibly* allege that a plan fiduciary engaged in a transaction proscribed therein." (emphasis added)). Yet, Plaintiff here simply describes the routine mechanics of plan administration rather than any specific transaction. And while Plaintiff does allege that Plan Fiduciaries authorized "tens of thousands of transactions," Doc. No. 17 ¶¶ 165, 172–73, 176–78, Plaintiff does not describe these transactions or plausibly explain why they are prohibited.

Second, while Plaintiff is correct that the body of Section 406(b) does not explicitly use the word "transaction," the majority of courts that have considered whether a Section 406(b) claim requires pleading a "transaction" in the forfeitures context have concluded that it does. *E.g.*, *Brown*, 812 F. Supp. 3d at 677 n.6; *Polanco v. WPP Grp. USA, Inc.*, 24-CV-9548 (JGK), 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025); *Estay I*, 2025 WL 2644782, at *6–7; *Barragan v. Honeywell Int'l*, No. 24cv4529 (EP) (JRA), 2025 WL 2383652, at *5 (D.N.J. Aug. 18, 2025); *Buescher v. N. Am.*

*Lighting*, 791 F. Supp. 3d 873, 896–97 (C.D. Ill. 2025). The Court agrees with the majority view. Although the body of Section 406(b) does not use the word "transaction," the structure and purpose of Section 406 show that subsection (b) is aimed at a species of prohibited transactions: ones involving self-dealing. *See Estay I*, 2025 WL 2644782, at *6–7. Plaintiff fails to plead such a transaction for her Section 406(b) claim.

Accordingly, Plaintiff has not plausibly stated a claim against Defendants for breach of ERISA's prohibitions on certain fiduciary transactions and self-dealing under Section 406(a) and (b). Counts IV and V are therefore **dismissed without prejudice**.

**E. Count VI: Anti-Inurement**

Under Count VI, Plaintiff alleges Plan Fiduciaries violated ERISA's anti-inurement provision, which prohibits Plan assets from inuring to the benefit of any employer. Doc. No. 17 ¶¶ 225–230 (citing 29 U.S.C. § 1103(c)(1)). Plaintiff claims that, by using Forfeited Plan Assets to offset Employer Contributions, "Defendants caused the assets of the plan to inure to the benefit of the employer and failed to defray reasonable expenses of the plan." *Id.* ¶ 228. In the Motion, Defendant Rithm counters that (1) it did not violate the anti-inurement provision since none of the assets at issue left the Plan, and (2) Plaintiff fails to allege Defendant Rithm inured any direct benefit. Doc. No. 24 at 23–24. Having taken the well-pleaded facts as true and viewing those in the light most favorable to Plaintiff, the Court concludes Plaintiff has pleaded Count VI with facial plausibility as the "factual content allows the court to draw the

reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Therefore, the Motion is **denied** as to Count VI.

### F. Leave to Amend

In her Response, Plaintiff requests that, in the event any portion of the First Amended Complaint is deficient, she be granted leave to amend. Doc. No. 26 at 24. The Court acknowledge that it "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)). In light of the evolving law surrounding ERISA forfeiture claims, the Court finds it appropriate to grant Plaintiff the opportunity to amend the deficient portions of the First Amended Complaint. Accordingly, the Court **grants** Plaintiff leave to file an amended complaint **within 14 days** of entry of this Memorandum Opinion and Order. If Plaintiff chooses to file an amendment, she shall also attach a redline showing the differences between that complaint and the First Amended Complaint.

## IV. Conclusion

The Motion is granted in part and denied in part. The Court **DENIES** the Motion as to Count III (Duty of Prudence) and Count VI (Anti-Inurement) because Plaintiff has pled enough factual content to allow the Court to draw the reasonable inference that Defendants are liable. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The Court **GRANTS** the Motion as to Count I (Breach of the Plan Document), Count II (Duty of Loyalty), Count IV (Fiduciary Prohibited Transactions / Self-Dealing – 29 U.S.C. § 1106(b)), and Count V (Fiduciary Prohibited Transactions / Self-Dealing – 29 U.S.C. § 1106(a)). Counts I, II, IV, and V are **DISMISSED WITHOUT**

**PREJUDICE**. As to the deficient portions of Plaintiff's complaint, the Court **GRANTS** Plaintiff leave to file an amended complaint **WITHIN 14 DAYS** of the entry of this Memorandum Opinion & Order.

**SO ORDERED.**

Signed September 22nd, 2026.

Ed Kinkeade
ED KINKEADE
UNITED STATES DISTRICT JUDGE